UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
SEP 10 2018
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

| | |
|---|---|
| William Bell, | § |
| *Plaintiff*, | § § § |
| v. | §  Civil Action No. 5:18-cv-00243-OLG |
| Portfolio Recovery Associates, LLC, | § § § |
| *Defendant*. | § § § |

## ORDER

On this day, the Court considered Defendant's Motion to Stay (docket no. 14) (the "Motion"). After considering the Motion and for the reasons set forth below, the Court finds that Defendant's Motion should be GRANTED.

## BACKGROUND

According to Plaintiff's Complaint, Defendant Portfolio Recovery Associates, LLC ("Defendant" or "PRA") is a business that collects accounts receivables from consumers. *See* docket no. 1 ¶ 8. Defendant places telephone calls to cellphone numbers using Avaya Proactive Contact Dialers, also known as a type of "predictive dialer." *See id.* at ¶ 19. Plaintiff owns a cellphone and alleges that Defendant attempted to collect debt owed by the Plaintiff by placing "harassing phone calls" to his cellphone number. *Id.* at ¶ 15. Plaintiff alleges that Defendant's use of a predictive dialer falls within the meaning of an "automatic telephone dialing system" ("ATDS") and therefore violates the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). *Id.* at ¶¶ 19-21, 32.

Defendant seeks to stay proceedings pending action by the Federal Communications Commission ("FCC") to potentially redefine the meaning of an ATDS under the TCPA. *See*

1

docket no. 14. In light of a recent D.C. Circuit opinion, the FCC is reassessing the definition of an ATDS. Specifically, in *ACA Int'l v. Fed. Commc'ns Comm'n,* 885 F.3d 687, 695-703 (D.C. Cir. 2018), the D.C. Circuit held that the FCC must narrow and/or clarify its interpretation of the statutory definition of an ATDS following a 2015 declaratory ruling by the agency.[1] *Id.* In light of the *ACA* decision, the FCC has sought "comment on what constitutes an 'automatic telephone dialing system'" and "how to interpret 'capacity'."[2] *See* docket no. 14-1 pp. 1-2. The FCC also sought comment as to other issues related to the appropriate interpretation of "automatic telephone dialing systems," including to what extent an ATDS must be able to generate and dial random or sequential numbers.[3] *See id.* at pp. 2-3. As a result, Defendant seeks to stay the proceedings in this case until the FCC has issued further guidance regarding the interpretation of "automatic telephone dialing systems" because Defendant contends that "[a] declaratory ruling by the FCC answering the questions raised above will directly apply to the issue of whether PRA's equipment constitutes an ATDS." *See* docket no. 14 p. 6.

---

[1] The TCPA states that a device constitutes an ATDS if it has the "capacity" to: (i) "store or produce telephone numbers to be called, using a random or sequential number generator"; and (ii) "dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B). A 2015 FCC declaratory ruling addressing the scope of the term "ATDS" was the subject of the *ACA* litigation. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2015 Declaratory Ruling"), 30 FCC Rcd. 7961 (2015).

[2] The FCC's existing interpretation of "capacity" included a calling equipment's "potential functionalities" including the "future possibility" of that equipment to perform the autodialer functions enumerated in the TCPA rather than merely the "present ability" of that equipment to do so. *ACA Int'l,* 885 F.3d at 695-96. The D.C. Circuit found this definition so broad as to be unreasonable because it "[had] the apparent effect of embracing any and all smartphones: the device routinely used by the vast majority of citizens to make calls and send messages." *Id.* at 696. This was because "essentially any smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer and thus function as an ATDS" within the meaning provided in the FCC's 2015 Declaratory Ruling. *Id.*

[3] The *ACA* court noted that some portions of FCC's 2015 Declaratory Ruling indicated that a predictive dialer must have the capacity to generate random or sequential numbers to be an ATDS under the TCPA, whereas other portions of the FCC's 2015 Declaratory Ruling indicated that a predictive dialer could constitute an ATDS even absent that capability. *ACA Int'l,* 885 F.3d at 701-03.

## DISCUSSION

"The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes the authority to control the scope and pace of discovery." *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones,* 520 U.S. 681, 708 (1997). "In determining whether a stay is proper, a district court should consider, among other factors, (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) judicial resources. *YETI Coolers, LLC v. Home Depot U.S.A., Inc.,* No. 1:17-cv-342-RP, 2018 WL 2122868, at *1 (W.D. Tex. Jan. 8, 2018).

Upon review, the Court concludes that a stay is appropriate at this time. The *ACA* decision has created uncertainty with respect to the scope of the term "ATDS" and its application to predictive dialers, a central issue in this litigation. Although the *ACA* court determined that clarification is required as to the specific capabilities a device must have in order to constitute an ATDS, the *ACA* court did not *explicitly* invalidate or abrogate the FCC's determination that a predictive dialer is an ATDS. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, 14,093 (2003). (stating that "a predictive dialer falls within the meaning and statutory definition of [ATDS] and the intent of Congress"). For that reason, some courts have continued to recognize that certain predictive dialers constitute ATDS devices under the TCPA, and they have done so even in light of the *ACA* decision and notwithstanding the need for the FCC to potentially revise its interpretation of the term "ATDS." *See O'Shea v. Am. Solar Sol.*, Inc., No. 3:14-CV-00894-L-RBB, 2018 WL 3217735, at *2 (S.D. Cal. July 2, 2018) (explaining scope of *ACA* decision and holding that predictive dialer used by defendant in that case was ATDS under the TCPA); *Swaney v. Regions Bank*, 2018 WL

2316452, at *1-*2 (N.D. Ala. May 22, 2018); *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV-GOODMAN, 2018 WL 2220417, at *11-*12 (S.D. Fla. May 14, 2018) (same); *Ammons v. Ally Fin., Inc.*, No. 3:17-CV-00505, 2018 WL 3134619, at *4-*7 (M.D. Tenn. June 27, 2018) (same). On the other hand, other courts—in light of the *ACA* decision—have determined that a predictive dialer must have the capability to generate random or sequential numbers (rather than just calling a list of numbers that has been provided) in order to constitute an ATDS. *Pinkus v. Sirius XM Radio*, No. 16C10858, 2018 U.S. Dist. LEXIS 125043, at *23-*33 (N.D. Ill. July 26, 2018) (holding that predictive dialers must have the capability to generate random or sequential numbers to constitute an ATDS); *Keyes v. Ocwen Loan Servicing, LLC*, No. 17cv11492, 2018 U.S. Dist. LEXIS 138445, at *16-*22 (E.D. Mich. Aug. 16, 2018) (finding that "devices must be able to generate random or sequential numbers to be dialed to qualify as an ATDS"); *Dominguez v. Yahoo*, Inc., 894 F.3d 116, 121 (3d Cir. 2018) (interpreting *ACA* decision to require that an ATDS have "the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers").

In this case, the record indicates that the device in question is a form of "predictive dialer," a type of device that has generally been considered to be an ATDS under the TCPA. *See* docket no. 1 ¶ 13. However, the record also indicates that the Avaya Proactive Contact Dialers used by Defendant do not presently have the capability to generate random or sequential numbers and then call those numbers. *See* docket no. 14-3 ¶¶ 7-9. Thus, the devices used by Defendant fall squarely within a grey area that has divided courts in the period since the D.C. Circuit's *ACA* decision. Accordingly, the Court believes it would be inappropriate to proceed with this litigation—and *potentially* order Defendant to incur substantial amounts in damages and defense costs—prior to more guidance regarding the appropriate scope of an ATDS, as

defined by the TCPA. For similar reasons, the Court also believes the conservation of judicial resources favors granting a stay, especially given that the determination of whether or not the device in question constitutes an ATDS will significantly impact (and/or potentially resolve) the parties' dispute.[4]

The Court fully recognizes that a stay pending a ruling by the FCC may result in a lengthy delay in litigating this dispute, which may ultimately prejudice Plaintiff. Indeed, as one district court recently described when denying a defendant's motion to stay in light of the *ACA* decision:

> The timing of a new order from the FCC is also uncertain. The FCC has expedited the public comment period, but that does not guarantee that an order will be issued in the immediate or near future. This process can take years.

*Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306-EDL, 2018 WL 3241069, at *5 (N.D. Cal. July 2, 2018).[5] For that reason, although the balance of the factors favors granting a stay in this case, the Court will place a finite duration on the stay. Defendant appears confident that requested stay will be "brief," *see* docket no. 24 p. 1 n. 4, and in the event the FCC has not issued final guidance within the next year, Defendant must again request an extension of the stay.[6] In

---

[4] To be clear, this Order addresses only Defendant's request for a stay, and it does not address the issue of whether the specific device used by Defendant constitutes an ATDS under the TCPA.

[5] In *Pieterson*, however, the Court determined that "significant portions of the dispute will be unaffected by the outcome of the FCC . . . proceedings." 2018 WL 3241069, at *5. As discussed above, the issues in this case are directly related to a topic on which the FCC is likely to provide further guidance.

[6] The Court will not extend the stay *solely* on the basis that the FCC has not yet issued a final order. The Court recognizes that subsequent developments over the next year—including preliminary guidance from the FCC and/or significant developments in the relevant case law— may mean that there is more uniformity and less uncertainty regarding the definition of an ATDS and its applicability to predictive dialers such as the device used by Defendant.

the interim, the Court will also require periodic status reports from the parties, so that the Court may monitor the stay and determine whether it should remain in place.

## CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion to Stay (docket no. 14) is **GRANTED**.

**IT IS THEREFORE ORDERED** the case is **STAYED** for **one (1) year** from the date of this Order, at which point the stay will be lifted, unless otherwise ordered by the Court.

**IT IS FURTHER ORDERED** that the parties shall file **quarterly** joint status reports to advise the Court as to the status of the matters currently before the FCC.[7]

**IT IS FURTHER ORDERED** that—should the FCC fully resolve the relevant matters pending before it during the duration of the stay—the parties shall jointly advise the Court **no later than seven (7) days** after the FCC issues such resolution.

**IT IS FURTHER ORDERED** that—should Defendant believe an extension of the stay is appropriate—Defendant may, **at least thirty (30) days** prior to the expiration of the stay, file a motion requesting such an extension. Should Defendant file such a motion, Plaintiff may file a response to Defendant's motion within **seven (7) days** of Defendant's filing.

It is so **ORDERED**.

**SIGNED** this 10 day of September, 2018.

_____
ORLANDO L. GARCIA
Chief United States District Judge

---

[7] The parties may agree to the specific date of such reports, but to the extent the stay is still in place, the Court expects joint status reports in December 2018, March 2019, and June 2019.